UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
Case No.: _____

| | |
|---|---|
| DARIN CARTER, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| OCEAN WALK RESORT | ) |
| CONDOMINIUM ASSOCIATION, | ) |
| INC., WYNDHAM VACATION | ) |
| OWNERSHIP, INC. d/b/a Club | ) |
| Wyndham Ocean Walk Resort, | ) |
| WYNDHAM VACATION RESORTS, | ) |
| INC., WYNDHAM VACATION | ) |
| MANAGEMENT, INC.; WYNDHAM | ) |
| FULFILLMENT GROUP LLC; and | ) |
| WORKSITE, LLC d/b/a Worksite | ) |
| Employee Leasing, | ) |
| | ) |
|         Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff DARIN CARTER (the "Plaintiff") sues defendants OCEAN WALK

RESORT CONDOMINIUM ASSOCIATION, INC.; WYNDHAM VACATION

OWNERSHIP, INC. d/b/a Club Wyndham Ocean Walk Resort; WYNDHAM

VACATION RESORTS, INC.; WYNDHAM VACATION MANAGEMENT, INC.;

WYNDHAM FULFILLMENT GROUP LLC; and WORKSITE, LLC d/b/a Worksite Employee Leasing (the "Defendants") and alleges:

## I.    <u>JURISDICTION & VENUE</u>

1.    This is a civil action for declaratory and injunctive relief, and damages brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA"), and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, *et seq.*

2.    This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the ADA. Further, this Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

3.    Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) as the events that give rise to this cause of action arose in this District.

## II.    <u>PARTIES</u>

4.    Plaintiff DARIN CARTER ("Plaintiff") is a resident of the State of Missouri. Plaintiff is a medically retired law enforcement officer who was shot in the line of duty in 2016 and, as a result, suffers from permanent physical and psychological disabilities, including nerve damage, limited mobility, post-traumatic stress disorder, depression, and adjustment disorder.

5.      Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12102(1), 28 C.F.R. § 36.104, and the Florida Civil Rights Act, Fla. Stat. § 760.22(7), because his impairments substantially limit one or more major life activities. Plaintiff uses a trained service animal to assist him with his disabilities.

6.      Defendant OCEAN WALK RESORT CONDOMINIUM ASSOCIATION, INC. ("OWRCA") is a Florida not-for-profit corporation that owns, operates, manages, and/or controls portions of the resort commonly known as *Ocean Walk Resort*, including common areas and amenities such as what is commonly known by Defendants as the "South Tower pool deck area," located at 300 North Atlantic Avenue, Daytona Beach, Florida 32118 (the "Resort"). The Resort is a place of public accommodation within the meaning of the ADA and the FCRA.

7.      Defendant WYNDHAM VACATION OWNERSHIP, INC. ("WVO") is a foreign corporation authorized to do business in Florida and, at all relevant times, owned, operated, managed, and/or controlled the operations, reservations, guest services, and customer-facing activities at the Resort, including, Club Wyndham Ocean Walk Resort and the "South Tower pool deck area." WVO

operates the Resort using the trade name *Club Wyndham Ocean Walk Resort* and is a place of public accommodation within the meaning of the ADA and the FCRA.

8. Defendant WYNDHAM VACATION RESORTS, INC. ("WVR") is a foreign corporation authorized to do business in Florida that develops, markets, sells, and services vacation ownership interests, including timeshares at Club Wyndham Ocean Walk Resort and the Resort. At all relevant times, WVR acted individually and/or as an agent of the other Defendants in operating the Resort, including the "South Tower pool deck area" and providing lodging and services to the public at the Resort.

9. Defendant WYNDHAM VACATION MANAGEMENT, INC. ("WVM") is a foreign corporation authorized to do business in Florida that provides property management services at Club Wyndham Ocean Walk Resort and the Resort, including the management of resort operations, staff, and common areas, including the "South Tower pool deck area." WVM is a place of public accommodation within the meaning of the ADA and the FCRA.

10. Defendant WYNDHAM FULFILLMENT GROUP LLC ("WFG") is a foreign limited liability company authorized to do business in Florida that, at all relevant times, owned, operated, managed, and/or controlled aspects of the vacation ownership program, reservations, and guest access at Club Wyndham

Ocean Walk Resort and the Resort, including the "South Tower pool deck area," and is therefore subject to the requirements of the ADA and the FCRA.

11.    Defendant WORKSITE, LLC d/b/a Worksite Employee Leasing ("Worksite") is a Florida limited liability company that operated, managed, and/or controlled aspects of the Resort and the "South Tower pool deck area." Worksite also employed the individual who directly violated the rights of Plaintiff under the ADA and the FCRA at the Resort.

12.    At all relevant times, each Defendant owned, leased, leased to, operated, managed, controlled, and/or acted as an agent or joint venturer of one or more of the other Defendants with respect to the ownership, operation, and management of Club Wyndham Ocean Walk Resort and the Resort and their common areas, including the "South Tower pool deck area." Each Defendant is legally responsible for the acts and omissions of its agents, employees, contractors, and representatives.

### III.    FACTUAL ALLEGATIOS

13.    Plaintiff DARIN CARTER is a medically disabled retired law enforcement officer who was shot in the line of duty in 2016. As a result of that incident, Plaintiff suffers from permanent physical and psychological disabilities,

including nerve damage, limited mobility, post-traumatic stress disorder ("PTSD"), depression, and adjustment disorder.

14.     Plaintiff's disabilities substantially limit one or more major life activities, including walking, standing, concentrating, sleeping, and interacting with others. Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.22(7).

15.     Due to his disabilities, Plaintiff uses a trained service dog named *Dozer*, who was obtained through a nonprofit organization after a rigorous application and training process. Dozer is individually trained to perform tasks that mitigate Plaintiff's disabilities and is therefore a service animal within the meaning of the ADA and its implementing regulations.

16.     At all relevant times, Dozer was clearly identified as a service animal and was under Plaintiff's control.

17.     Defendants own, lease, lease to, operate, manage, control, and/or conduct business at the Resort located at 300 North Atlantic Avenue, Daytona Beach, Florida 32118.

18.     The Resort consists of two towers commonly referred to as the "North Tower" and the "South Tower," and includes lodging, guest services, pools, recreational amenities, and other common areas open to resort guests.

19.     Defendant OWRCA operates and controls the South Tower and its common areas, including the South Tower pool deck area and the employees who work in that area.

20.     Defendant WVO jointly operates, manages, markets, sells, and services vacation ownership interests at the Resort, including reservations, guest access, customer service, and property management.

21.     Defendant WVR develops and sells vacation ownership interests that provide access to the Resort and its amenities.

22.     Defendant WVM provides property management services at the Resort, including management of common areas and guest services.

23.     Defendant WFG performs administrative and operational functions related to Defendants' vacation ownership and resort operations.

24.     Defendant Worksite is the direct employer of Charles ("Chuck") Pagels, a supervisor and security officer that supervised the South Tower pool deck area at a time in which Plaintiff visited the Resort.

25. At all relevant times, Defendants acted individually and/or as agents, joint venturers, or participants in a common enterprise with respect to the ownership, operation, and management of the Resort and its amenities.

26. Defendants use shared branding, trade names, management personnel, reservation systems, and operational control to present the Resort as a single, integrated public accommodation to guests.

27. Defendants' operations at the Resort affect interstate commerce and constitute a place of public accommodation within the meaning of Title III of the ADA and the FCRA.

28. In or about 2019, Plaintiff purchased a vacation ownership interest through Defendants, which entitled him to access lodging and amenities at Club Wyndham resorts, including the Resort (the "Timeshare").

29. WVO and WVR represented to Plaintiff that his vacation ownership interest or Timeshare provided Plaintiff and his family access to the Resort and its amenities without restriction, subject only to general resort rules applicable to all guests.

30. In or about October 2023, Plaintiff made a reservation to stay at the Resort using Defendants' reservation system.

31.     Plaintiff received written confirmation that his stay at the Resort was confirmed.

32.     The reservation confirmation did not disclose any limitations, exclusions, or restrictions regarding Plaintiff's access to Resort amenities, including pools or other common areas.

33.     Plaintiff and his wife traveled from Missouri to Florida and stayed at the Resort from approximately December 1 through December 5, 2023.

34.     On December 1 and December 2, 2023, Plaintiff and his wife accessed the Resort's "South Tower pool deck area" with Plaintiff's service dog without incident.

35.     On December 3, 2023, while Plaintiff and his wife were seated at the pool deck with Dozer lying quietly beside them, a security officer, Charles Pagels, approached Plaintiff and informed him that service animals were not permitted at the pool area.

36.     The incident occurred at the Resort site commonly known by the Defendants as the "South Tower pool deck area."

37.     Plaintiff informed the security officer, Mr. Pagels, that Dozer was a trained service animal and that federal law required the Resort to allow service animals in public accommodations.

38.    Plaintiff attempted to show ADA guidance and documentation identifying Dozer as a service animal.

39.    Despite this information, Mr. Pagels insisted that he was acting pursuant to management directives and ordered Plaintiff to leave the pool deck because of his service animal.

40.    The incident occurred in front of approximately fifteen to twenty other guests who observed the incident, causing Plaintiff immediate humiliation, embarrassment, and emotional distress. The incident has caused an ongoing mental trauma to Plaintiff.

41.    As a direct result of Defendants' actions, Plaintiff was denied full and equal access to the Resort's facilities and amenities on the basis of his disability.

42.    After the incident, Plaintiff reported the discrimination to Resort management. Although a manager acknowledged that the removal was improper, Defendants failed to immediately correct the discriminatory conduct.

43.    Plaintiff and his wife avoided returning to the pool deck for the remainder of their stay due to fear of further humiliation or confrontation.

44.    Plaintiff suffered emotional distress, anxiety, humiliation, loss of sleep, and exacerbation of PTSD symptoms as a result of Defendants' conduct.

Plaintiff still suffers these symptoms as a result of his ongoing trauma with the incident.

45. Plaintiff has lost confidence that Defendants' Resort (and other facilities across the country) complies with the ADA and the FCRA. He is continuously worried that even though he needs his dog to attend public accommodations, he might be denied access just because he is disabled with a service dog.

46. Plaintiff intends to have Defendants implement ADA-compliant policies, training, and procedures to prevent humiliating and distressing moments in the future.

47. Defendants' failure to properly train their staff and enforce ADA-compliant policies creates an ongoing and real risk of continued discrimination.

## IV.  PROCEDURAL BACKGROUND

48. Plaintiff filed a Public Accommodation Complaint of Discrimination with the Florida Commission on Human Relations ("the Commission") on June 12, 2024, alleging that Ocean Walk Vacation Ownership Association, Inc. ("OWVOA") discriminated against him based on his disability. OWVOA is not a

party to this case at this time. Should discovery reveal that OWVOA should be named as a Defendant, Plaintiff will seek leave to amend his complaint.

49.    On August 16, 2024, OWVOA filed a response and, in substance, stated that OWVOA was not the entity responsible for the management and operation of the Resort and its common areas.

50.    OWVOA suggested that OWRCA (and not OWVOA) managed and operated the Resort and common areas including the pool deck, and that OWRCA employed the employee that subjected Plaintiff to discrimination.

51.    Following OWVOA's response, Plaintiff, on November 19, 2024, filed a supplemental and second Public Accommodation Complaint of Discrimination against OWRCA.

52.    In the body of this second/supplemental Public Accommodation Complaint, Plaintiff explained:

*"I previously filed a charge against [OWVOA]. In its position statement, [OWVOA] claims that the employer of the person who discriminated against me is the Respondent in this charge, [OWRCA]. This charge is being filed in an abundance of caution. [OWVOA] and [OWRCA] are joint employers."*

53.    On January 3, 2025, the Commission issued a Determination that "no reasonable cause" existed to believe that OWVOA engaged in unlawful practice.

54.     Importantly, the Commission's determination did not include any notice, finding or determination regarding OWRCA. The Commission failed to make a determination regarding Plaintiff's Public Accommodation Complaint against OWRCA.

55.     On January 29, 2025, the Plaintiff filed a Petition for Relief with the Commission and, as a result, the State of Florida Division of Administrative Hearings conducted a final hearing as to OWVOA only. The final hearing explained the involvement of the Defendants in the instant action and resulted in an Order finding that OWVOA "is not an owner/operator of the South Tower's pool deck and other common areas [and OWVOA] does not direct or control security personnel at the South Tower. Accordingly, to whatever extent that [Plaintiff] experienced a violation of the Act on December 3, 2023, while on the South Tower's pool deck, [OWVOA] is not the responsible party."

56.     Because the Commission failed to make a reasonable cause determination as to Plaintiff's Public Accommodation Complaint against OWRCA, this action is timely filed against OWRCA. *See* Fla. Stat. § 95.11(3)(f) (2024); *see also Joshua v. City of Gainesville*, 768 So. 2d at 433 (Fla. 2000) (holding general four-year statute of limitations for statutory violations under Florida Statutes § 95.11(3)(f) applies when the Commission does not make a reasonable

cause determination on a complaint within the 180 days as contemplated by section 760.11(8)).

## COUNT I: FAILURE TO MAKE REASONABLE MODIFICATIONS

57.    Plaintiff re-alleges and incorporates each of the above paragraphs numbered 1 through 56 as if fully set forth herein.

58.    Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182(a), provides that:

> *No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*

59.    Among the specific acts of discrimination prohibited by the ADA is the failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of the goods or services. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

60.    The Resort operated, managed, controlled, and/or franchised by Defendants constitutes a place of public accommodation within the meaning of 42 U.S.C. § 12181(7).

61.     At all relevant times, Defendants owned, leased, operated, managed, and/or exercised control over the Resort, its policies, and its operations.

62.     Plaintiff is an individual with a disability as defined by the ADA and was therefore entitled to the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages, and accommodations.

63.     Defendants had actual knowledge of Plaintiff's disability and of his need for reasonable modifications to Defendants' policies, practices, and procedures in order to access and use the Resort's facilities and services on an equal basis.

64.     Despite this knowledge, Defendants failed to make reasonable modifications necessary to accommodate Plaintiff's disability. They denied him access to the "South Tower pool deck area."

65.     Defendants' refusal to provide reasonable modifications denied Plaintiff full and equal access to the goods, services, facilities, privileges, advantages, and accommodations of the Resort, in violation of Title III of the ADA.

66.     Defendants' actions were not based on any legitimate safety concern, nor were they necessary to prevent a fundamental alteration of Defendants' operations.

67.   Providing reasonable modifications to accommodate Plaintiff's disability would not have imposed an undue financial or administrative burden on Defendants.

68.   Defendants' conduct constitutes intentional and willful discrimination against Plaintiff on the basis of disability.

69.   As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has been denied the full and equal enjoyment of a place of public accommodation and continues to face a real and immediate threat of future discrimination absent judicial intervention.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff and against Defendants on this Count;

b. Declare that Defendants' acts and omissions violate Title III of the Americans with Disabilities Act;

c. Issue preliminary and permanent injunctive relief requiring Defendants to modify their policies, practices, and procedures to comply with the ADA;

d. Enjoin Defendants from engaging in further discriminatory conduct against individuals with disabilities;

e. Award Plaintiff reasonable attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205; and

f. Grant such other and further relief as this Court deems just and proper.

## COUNT II: RETALIATION

70.    Plaintiff re-alleges and incorporates each of the above paragraphs numbered 1 through 56 as if fully set forth herein.

71.    The ADA prohibits retaliation against any individual because such individual has opposed any act or practice made unlawful by the ADA, or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA. 42 U.S.C. § 12203; 28 C.F.R. § 36.206(c)(4).

72.    Plaintiff engaged in protected activity when Plaintiff complained to Mr. Pagels about how the law protected disabled individuals with a service dog. In retaliation, Defendants denied Plaintiff access to the "South Tower pool deck area."

73.    Defendants failed to provide reasonable modifications and equal access as required by the ADA.

74.    Defendants were aware of Plaintiff's protected activity.

75.    Defendants' adverse actions were causally connected to Plaintiff's protected activity and were undertaken in retaliation for Plaintiff's efforts to enforce rights guaranteed by the ADA.

76.    Defendants' retaliatory conduct was intentional, willful, and in reckless disregard of Plaintiff's federally protected rights.

77. As a result of Defendants' retaliation, Plaintiff suffered injury and continues to face a real and immediate threat of further retaliatory conduct absent judicial intervention.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff and against Defendants on this Count;

b. Declare that Defendants violated the ADA's anti-retaliation provisions, 42 U.S.C. § 12203;

c. Enjoin Defendants from engaging in further retaliatory conduct against Plaintiff and other individuals who exercise rights protected by the ADA;

d. Award Plaintiff reasonable attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205; and

e. Grant such other and further relief as the Court deems just and equitable.

## COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

78. Plaintiff re-alleges and incorporates each of the above paragraphs numbered 1 through 56 as if fully set forth herein.

79. The Florida Civil Rights Act of 1992 (the "FCRA"), chapter 760, prohibits discrimination in places of public accommodation.

80. Section 760.08 of the FCRA provides that: [a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without

discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion.

81.     Section 760.02(11) defines a "public accommodation" as: places of public accommodation, lodgings, facilities principally engaged in selling food for consumption on the premises, gasoline stations, places of exhibition or entertainment, and other covered establishments. Each of the following establishments which serves the public is a place of public accommodation within the meaning of this section: (a) Any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than four rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his or her residence. (b) Any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment, or any gasoline station. (c) Any motion picture theater, theater, concert hall, sports arena, stadium, or other place of exhibition or entertainment. (d) Any establishment which is physically located within the premises of any establishment otherwise covered by this subsection, or within the premises of

which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment.

82.    Florida provides additional protections for disabled persons who utilize service animals.

83.    Section 413.08(2), Florida Statutes, mandates that: [a]n individual with a disability is entitled to full and equal accommodations, advantages, facilities, and privileges in all public accommodations. A public accommodation must modify its policies, practices, and procedures to permit use of a service animal by an individual with a disability. This section does not require any person, firm, business, or corporation, or any agent thereof, to modify or provide any vehicle, premises, facility, or service to a higher degree of accommodation than is required for a person not so disabled.

84.    With regard to service animals, section 413.08(3) provides that: An individual with a disability has the right to be accompanied by a service animal in all areas of a public accommodation that the public or customers are normally permitted to occupy. (a) The service animal must be under the control of its handler and must have a harness, leash, or other tether, unless either the handler is unable because of a disability to use a harness, leash, or other tether, or the use of a harness, leash, or other tether would interfere with the service animal's safe,

effective performance of work or tasks, in which case the service animal must be otherwise under the handler's control by means of voice control, signals, or other effective means. (b) Documentation that the service animal is trained is not a precondition for providing service to an individual accompanied by a service animal.

85.     A public accommodation may not ask about the nature or extent of an individual's disability. To determine the difference between a service animal and a pet, a public accommodation may ask if an animal is a service animal required because of a disability and what work or tasks the animal has been trained to perform.

86.     The FCRA is patterned after Title II of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000a, and Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 ("the ADA"). Therefore, federal decisions construing these federal laws are applicable when considering claims under the FCRA. *See Abadi v. Walt Disney World Parks & Resorts*, 338 So. 3d 1101, 1104 (Fla. 1st DCA 2022)(noting that "[d]ue to their similarities, [the Act] is construed in conformity with the ADA.").

87.     At all relevant times, the Resort and its related facilities were open to the public and offered lodging, amenities, services, and accommodations to members of the public, including guests, invitees, and timeshare owners.

88. The Resort constitutes a place of public accommodation within the meaning of the FCRA.

89. Plaintiff is an individual with a disability and is therefore a member of a protected class under the FCRA.

90. Defendant OWCRA owned, operated, managed, controlled, and/or exercised authority over the Resort and its policies and practices.

91. Defendant OWCRA was aware of Plaintiff's disability and Plaintiff's disability-related need for equal access to Defendants' goods, services, facilities, privileges, advantages, and accommodations.

92. Notwithstanding such knowledge, Defendant OWCRA denied Plaintiff full and equal enjoyment of the Resort's goods, services, facilities, privileges, advantages, and accommodations on the basis of Plaintiff's disability.

93. Defendant OWCRA's actions included, but were not limited to, the failure to provide reasonable modifications, discriminatory enforcement of policies, denial of access, and other conduct that treated Plaintiff differently because of Plaintiff's disability.

94. Defendant OWCRA further subjected Plaintiff to adverse and retaliatory treatment after Plaintiff complained about disability discrimination and attempted to enforce rights protected under the ADA and the FCRA.

95.     Defendant OWCRA's conduct was intentional, willful, and taken in reckless disregard of Plaintiff's rights under the FCRA.

96.     Plaintiff is an "aggrieved person" within the meaning of Fla. Stat. § 760.02(10).

97.     As a direct and proximate result of Defendant OWCRA's discriminatory conduct, Plaintiff suffered damages, including but not limited to mental anguish, loss of dignity, humiliation, and other intangible injuries.

98.     Defendant OWCRA knew or should have known that its conduct was unlawful and that there was a high probability that such conduct would cause harm to Plaintiff.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff and against Defendant OWCRA on this Count;

b. Declare that Defendant OWCRA's acts and omissions violate the Florida Civil Rights Act;

c. Award Plaintiff compensatory damages, including damages for emotional distress and loss of dignity;

d. Award punitive damages as permitted by law;

e. Grant injunctive and declaratory relief to prevent future acts of discrimination;

f. Award Plaintiff reasonable attorneys' fees and costs pursuant to Fla. Stat. § 760.11; and

g. Grant such other and further relief as the Court deems just and proper.

## COUNT IV: THIS COURT'S POWER TO GRANT RELIEF

99.     Plaintiff re-alleges and incorporates each of the above paragraphs numbered 1 through 56 as if fully set forth herein.

100.     Plaintiff has suffered and continues to suffer irreparable harm as a result of Defendants' discriminatory and retaliatory conduct in violation of the Americans with Disabilities Act and the Florida Civil Rights Act.

101.     Absent injunctive and declaratory relief from this Court, Plaintiff faces a real and immediate threat of continued and future discrimination and retaliation by Defendants.

102.     The Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189, and Rule 65 of the Federal Rules of Civil Procedure, individually and collectively, empower this Court to grant temporary, preliminary, and permanent injunctive relief, as well as declaratory relief, to prevent and remedy violations of the ADA.

103.     In the exercise of its equitable jurisdiction, this Court is authorized to order reasonable modifications of policies, practices, and procedures, training, accommodation directives, and other affirmative relief necessary to ensure Defendants' compliance with the ADA and the Florida Civil Rights Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Enter judgment declaring that Defendants' acts, policies, and practices violate Title III of the Americans with Disabilities Act;

b. Enter judgment declaring that Defendant OWCRA's acts, policies, and practices violate the Florida Civil Rights Act of 1992;

c. Issue temporary, preliminary, and permanent injunctive relief enjoining Defendants, their officers, agents, employees, representatives, successors, and all persons acting in concert with them from engaging in discriminatory or retaliatory conduct on the basis of disability;

d. Order Defendants to modify their policies, practices, and procedures to ensure full and equal access to the goods, services, facilities, privileges, advantages, and accommodations of the Resort for individuals with disabilities;

e. Order Defendants to take all affirmative steps necessary to restore Plaintiff to the position Plaintiff would have occupied absent Defendants' unlawful conduct, including unfettered access to the Resort and its facilities on an equal basis with non-disabled individuals;

f. Award Plaintiff reasonable attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205 and Fla. Stat. § 760.11;

g. Grant such other and further legal and equitable relief as this Court deems just and proper.

## JURY TRIAL DEMAND

The Plaintiff demands trial by jury of all issues so triable as of right.

Dated: March 9, 2026.

Respectfully submitted,

By:__**/s/ R. Martin Saenz**
R. Martin Saenz, Esquire
Fla. Bar No.: 0640166

**THE SAENZ LAW FIRM PA (WWW.LEGALOPINIONUSA.COM)**

20900 NE 30th Avenue, Suite 200-23          Telephone: 305.482.1475
Aventura, Florida 33180                              www.Cash4myCase.com

25

Email: martin@legalopinionusa.com

THE SAENZ LAW FIRM, P.A.
20900 NE 30th Avenue, Ste. 200-23
Aventura, Florida 33180
Telephone: (305) 482-1475
*Counsel for Plaintiff*